**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **INFORMED CONSENT ACTION NETWORK,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HEALTH RESOURCES AND SERVICES ADMINISTRATION, et al.,**<br><br>**Defendants.** | **Case No. 24-cv-0407 (APM)** |

**MEMORANDUM OPINION AND ORDER**

**I.**

In July 2022, Plaintiff Informed Consent Action Network submitted a Freedom of Information Act (FOIA) request to Defendant Health Resources and Services Administration ("HRSA"), a component of Defendant U.S. Department of Health and Human Services. After acknowledging its receipt, HRSA provided no further information about the request, prompting Plaintiff to bring this action in February 2024. Five months later, on July 31, 2024, HRSA made the first of three records releases, delivering the next two on September 30, 2024, and October 29, 2024. *See* Joint Status Report, ECF No. 18, at ¶¶ 7–9.

Plaintiff now seeks attorney's fees and costs. The main dispute is whether Plaintiff's filing of this suit caused the release of records. If it did, Plaintiff may be awarded fees; if not, it is ineligible. After carefully considering the parties' positions, the court finds that this lawsuit did not cause HRSA to produce documents to Plaintiff. Accordingly, Plaintiff's Motion for Attorneys' Fees and Costs, ECF No. 27 [hereinafter Pl.'s Mot.], is denied.

## II.

FOIA vests courts with discretion to award attorney's fees and costs to successful requesters. 5 U.S.C. § 552(a)(4)(E)(i). A fee petition requires courts to determine whether an applicant is both eligible and entitled to an award. *See Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981). The court only discusses the eligibility prong, which asks whether the plaintiff has "substantially prevailed."[1] *Id.*; *see also* 5 U.S.C. § 552(a)(4)(E)(i). A plaintiff "substantially prevail[s]" if it has "obtained relief" through either (1) "a judicial order, or an enforceable written agreement or consent decree," or (2) "a voluntary or unilateral change in position by the agency, if the [requester's] claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). Only the second of these paths—known as the "catalyst theory"—is available here. *See Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 95 (D.C. Cir. 2020) (per curiam).

Under that theory, the relevant question is whether "the institution and prosecution of the litigation caused the agency to release the documents obtained." *Id.* at 97 (cleaned up). Establishing causation requires more than a sequential showing of complaint filing and the release of records. *See id.* Rather, the requester bears the burden of demonstrating "that it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Id.* (quoting *Pub. Citizen Health Rsch. Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)).[2]

---

[1] Because the court does not find that Plaintiff is eligible for a fee award, it does not reach the parties' arguments over entitlement or the reasonableness of the request. *See* Pl.'s Mot., Mem. in Supp. of Pl.'s Mot., ECF No. 27-1, at 24–39; *see also* Defs.' Opp'n to Pl.'s Mot., ECF No. 28, at 12–23.

[2] Plaintiff spills much ink insisting that the catalyst theory and its causal nexus requirement are dead letter after Congress amended FOIA's fee provision in the OPEN Government Act of 2007 to permit a fee award when there is a "voluntary or unilateral change in position by the agency." *See* Pl.'s Mem. at 5–14 (quoting 5 U.S.C. § 552(a)(4)(E)(ii)). Plaintiff contends that demanding proof of causation cannot be reconciled with the plain statutory text, which contains no such requirement. *See id.* Whatever the merits of Plaintiff's statutory reading, the court cannot adopt it because it is squarely foreclosed by D.C. Circuit precedent. *See Informed Consent Action Network v. Nat'l Inst. of Health*, No. 23-cv-3674 (RBW), 2025 WL 3484885, at *3 n.3 (D.D.C. Dec. 4, 2025) (rejecting the same argument made by this same Plaintiff). That court has stated repeatedly that the purpose and effect of the 2007 law was to reinstate the catalyst theory in FOIA actions after the Supreme Court had rejected it in the *Buckhannon* case. *See Grand Canyon Trust*, 947 F.3d at 97 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and*

**III.**

Plaintiff offers two primary uncontested facts to establish causation: (1) the 19-month period between its request (July 2022) and filing suit (February 2024) during which HRSA produced no records, with meaningful processing occurring only after the litigation commenced, and (2) HRSA's failure to respond to Plaintiff's October 2022 inquiry about an estimated completion date. *See* Pl.'s Mot., Mem. in Supp. of Pl.'s Mot., ECF No. 27-1 [hereinafter Pl.'s Mem.], at 20–23; Pl.'s Reply in Support of Pl.'s Mot., ECF No. 29 [hereinafter Pl.'s Reply], at 3, 12. Plaintiff also argues that this action caused a "sudden acceleration" of production that satisfies the causation standard. *See* Pl.'s Mem. at 20; Pl.'s Reply at 12. The court is unpersuaded.

In assessing whether a plaintiff has met its burden on causation, "it is appropriate for the district court to consider . . . whether the agency, upon actual and reasonable notice of the request, made a good faith effort to search out material and to pass on whether it should be disclosed." *Cox v. U.S. Dep't of Justice*, 601 F.2d 1, 6 (D.C. Cir. 1979); *accord Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1497 (D.C. Cir. 1984). Also relevant is "the number of requests pending before the agency and the time-consuming nature of the search and the decisionmaking process." *Weisberg*, 745 F.2d at 1498. "If rather than the threat of an adverse court order either a lack of actual notice of a request or an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to the request, then it cannot be said that the complainant substantially prevailed in his suit." *Cox*, 601 F.2d at 6.

Here, there is no dispute that HRSA began processing Plaintiff's request long before it filed suit. Four days after the request's submission, the agency issued a written acknowledgment of its

---

*Human Res.*, 532 U.S. 598, 610 (2001) (rejecting the catalyst theory as a basis for a fee award under comparable statutory text)). This court therefore must apply the catalyst theory and its causation requirement. *See Informed Consent Action Network*, 2025 WL 3484885 at *3 n.3.

receipt. Decl. of Brian A. May, ECF No. 28-2 [hereinafter May Decl.], ¶ 8. Sixteen days later, on July 27, 2022, HRSA's FOIA office tasked HRSA's Office of Information Technology with coordinating a search for responsive documents. *Id.* ¶ 9. And eleven days after that, on August 11, 2022, the Office of Information Technology provided the FOIA office with 2,853 pages of potentially responsive records. *Id.* ¶ 10. So, approximately one month after receiving Plaintiff's request, HRSA had conducted a search, identified potentially responsive records, and placed them in a processing queue. *See id.* ¶¶ 10–11. It thus had begun a diligent effort to respond to Plaintiff's request long before this suit's filing.

To be sure, as Plaintiff points out, the records sat in a processing queue for months even after the agency identified potentially responsive material. *See* Pl.'s Reply at 10–11. "[S]ome amount of delay in excess of the statutory limit is, regrettably, a common feature of the FOIA process." *Zynovieva v. U.S. Dep't of State*, 19-cv-3445 (RDM), 2023 WL 2755599, at *6 (D.D.C. Mar. 31, 2023). Here, that delay is explained by the "steep and unanticipated increase" in FOIA requests received during the relevant period. May Decl. ¶ 16. In FY 2022, the fiscal year in which Plaintiff submitted its request, HRSA experienced a 55% increase in requests over the prior fiscal year. *Id.* In FY 2023 and FY 2024, the upward trend continued with 22% and 14% increases, respectively. *Id.* This "substantial increase" caused HRSA's backlog of unanswered requests to grow "significantly." *Id.* ¶ 17. The backlog of 48 requests at the end of FY 2022 had grown to 260 by the end of FY 2024, an increase of 441%. *Id.* And this "surge in incoming FOIA requests . . . created backlogs at each stage of [the] search and review process." *Id.* ¶ 22. The increasing complexity of requests, the rise in administrative appeals and FOIA litigation, and staffing shortages also were contributing factors. *Id.* ¶¶ 23–39. Still, the agency put its best foot forward. It processed approximately 87% of all FOIA requests received from FY 2022 to FY 2025. *Id.* ¶ 19.

These agency representations are entitled to a presumption of good faith, *see SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and Plaintiff has not come forward with any evidence to rebut them.

Instead, it argues that "Defendants cannot rely on generalized claims about workload, backlog, or staffing unless they tie those claims to request-specific proof showing this request would have been processed on the same schedule absent suit." Pl.'s Reply at 13. Plaintiff, however, cites no case placing such a stringent burden on the agency to *disprove* causation. Courts routinely accept agency explanations about backlogs causing delay without insisting on a showing that the "request would have been processed on the same schedule absent suit." *Id.*; *see, e.g.*, *Informed Consent Action Network*, No. 23-cv-3674 (RBW), 2025 WL 3484885, at *4–5; *First Look Media Works, Inc. v. U.S. Agency for Glob. Media*, No. 20-cv-3499 (TJK), 2024 WL 4262773, at *4 (D.D.C. 2024), *aff'd sub nom. First Look Inst., Inc. v. U.S. Agency for Glob. Media*, No. 24-5257, 2025 WL 1840647 (D.C. Cir. July 2, 2025).

Nor does Plaintiff's emphasis on "the stark before-and-after" win the day. Pl.'s Reply at 11. Plaintiff points out that pre-suit, potentially responsive records sat in a processing queue for months, and only after this action commenced did the agency begin to winnow them down and produce actually responsive materials. *See id.* at 10–11. But as the D.C. Circuit has said repeatedly, "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Weisberg*, 745 F.2d at 1496; *see also Grand Canyon Tr.*, 947 F.3d at 97; *Cox*, 601 F.2d at 6. More pertinent is that this record lacks any indication that the agency forgot about Plaintiff's FOIA request or would have failed to comply with it, absent this lawsuit. *See Grand Canyon Tr.*, 947 F.3d at 97; *First Look Media*, 2024 WL 4262773, at *4. The lag in production is better explained by "an unavoidable delay accompanied by due diligence

in the administrative process." *Cox*, 601 F.2d at 6; May Decl. ¶ 22 (stating that the increase in FOIA requests created backlogs at "each stage of HRSA-FOIA's search and review process"). "The causation requirement is missing [here, where] disclosure result[ed] not from the suit but from delayed administrative processing." *Short v. U.S. Army Corps of Eng'rs*, 613 F. Supp. 2d 103, 106 (D.D.C. 2009).

Plaintiff's "sudden acceleration" claim likewise fails. The D.C. Circuit has not officially sanctioned this as a theory of causation, *see Grand Canyon Tr.*, 947 F.3d at 97–98, but courts that have applied it require plaintiffs to establish two things: (1) "the agency decided against disclosure or was engaging in an unexplained delay" and (2) "the agency did in fact accelerate its response to the FOIA request because of the lawsuit." *See First Look Media Works*, 2024 WL 4262773, at *4. Plaintiff satisfies neither factor. As discussed, the reason for the delay was the increasing number, complexity, and backlog of FOIA requests. May Decl. ¶ 53 ("The time required to complete processing . . . was attributable to an unprecedented surge in FOIA requests, increased scope and complexity of requests, and a significant rise in FOIA appeals and litigation, all of which substantially affected HRSA-FOIA's processing capacity."). And the agency did not accelerate its production in response to this suit. "[C]ourts have held that production delays of more than a month following a suit's filing make it 'seem[ ] more likely, in fact, that the documents would have been processed in the same manner, with the same result, regardless of whether litigation was filed.'" *First Look Media Works*, 2024 WL 4262773, at *5 (quoting *Am. Wild Horse Campaign v. U.S. Bureau of Land Mgmt.*, No. 22-cv-3061 (CRC), 2024 WL 3967256, at *3 (D.D.C. Aug. 26, 2024)). Here, HRSA released the first set of records on July 31, 2024, five months after Plaintiff filed suit. May Decl. ¶ 43. The second and third releases took place seven and eight months post-initiation on September 30, 2024, and October 29, 2024, respectively. *Id.* ¶¶ 44–45. This timing

does not amount to "a sudden burst of alacrity" that would permit a finding of sudden acceleration. *Ctr. for Immigr. Stud. v. U.S. Citizenship and Immigr. Servs.*, No. 23-cv-3491 (CRC), 2025 WL 3458766, at *4 (D.D.C. Dec. 2, 2025), *aff'd sub nom. Ctr. for Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*, No. 26-5037, 2026 WL 2664056 (D.C. Cir. Aug. 26, 2026) (internal quotation marks omitted).

Finally, HRSA's failure to respond when asked for an estimated date of completion does not tip the scale in Plaintiff's favor. "While [HRSA] could—and perhaps should—have done more to explain its delay in processing the FOIA requests, [Plaintiff] has not met its burden of showing that initiating this litigation caused the Agency to release documents it would not have otherwise." *Id.* at *3; *see also Informed Consent Action Network*, 2025 WL 3484885, at *5 (citing *Am. Wild Horse Campaign*, 2024 WL 3967256, at *3).

**IV.**

In summary, having failed to carry its burden of showing that it is more probable than not that this suit caused HRSA to release records, Plaintiff has not proven it is eligible for fees under FOIA. Accordingly, its Motion for Attorneys' Fees and Costs, ECF No. 27, is denied.

Dated: September 28, 2026

Amit P. Mehta
United States District Judge